IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RUSS SHOEMAKER and
LORI BRAGET-SHOEMAKER,

                      Plaintiffs,                      OPINION & ORDER

  v.

                                              14-cv-279-jdp

LAKE ARBUTUS PAVILION, LLC,

                      Defendant.

---

      The federal Fair Labor Standards Act (FLSA) requires the payment of overtime wages to qualifying employees, but it only applies to employers and employees who are engaged in interstate commerce. Plaintiffs Russ Shoemaker and Lori Braget-Shoemaker contend that under the FLSA and Wisconsin law, they are owed overtime from their former employer, defendant Lake Arbutus Pavilion, LLC (LAP), which operates a roller-skating rink with a bar and diner in Merrillan, Wisconsin. LAP moves for summary judgment on the grounds that neither LAP nor the Shoemakers were engaged in interstate commerce, and therefore, the FLSA does not apply to them. The question before the court is whether the Shoemakers have raised a genuine issue of fact as to whether either LAP or the Shoemakers were engaged in interstate commerce. The court concludes that they have not, and it will grant LAP's motion for summary judgment on the FLSA claim.

      The Shoemakers have also brought several state law claims against LAP. But because LAP is entitled to summary judgment on the only claim over which the court has original jurisdiction, the court will exercise its discretion to dismiss the Shoemaker's state law claims. This dismissal will be without prejudice, and the Shoemakers may pursue their state law claims in state court.

UNDISPUTED FACTS

Most of the material facts are undisputed. The Shoemakers attempt to contest some of the facts proposed by LAP, and they propose some of their own. But for reasons explained in this opinion, the Shoemakers have not adduced admissible evidence to support their version of those facts.

In 2011, the Shoemakers partnered with Hope Laufenberg and her husband Jerome to start a roller-skating rink with a bar and diner in Merrillan, Wisconsin. They named the business Lake Arbutus Pavilion, LLC (LAP), and it opened in 2012. According to Hope's declarations and supporting documents, LAP's sales have never exceeded $500,000. Hope's declaration also establishes that LAP uses Wisconsin vendors. The Shoemakers contest these facts as "self-serving," but they have adduced no evidence to controvert them. LAP provides its services at its location in Merillan, and it has never provided goods or services across state lines. LAP is in an area that attracts tourists, and thus some of its customers may have come from out of state, particularly Chicago.

After starting as partners with the Laufenbergs, the Shoemakers later became employees of LAP, and in that capacity they helped to get the rink up and running. Before the rink opened, Russ worked on the site, cleaning up and overseeing construction. Lori also helped with the cleaning and preparation. After the rink opened, Russ continued to do site management and to assist with construction. He had access to the company bank account, and he wrote checks and deposited money on the company's behalf. He also helped arrange for advertising in local newspapers. Both Russ and Lori helped with customer service, working at the skate rental counter and in the bar and diner.

The Shoemakers allege that they worked more than 40 hours per week, but that LAP failed to pay them overtime. Dkt. 1, ¶ 12. They brought this suit under the FLSA and state law

to recover their lost overtime wages. The court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331, and it would have supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

ANALYSIS

The Shoemakers contend that they worked long hours as employees of LAP, but that they did not receive pay at overtime rates for their overtime, as required by both the FLSA and Wisconsin law. To prevail on their FLSA claim, the first element the Shoemakers must prove is that the FLSA applies to their claim. *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). They may sustain their burden of proof by showing either (1) coverage for LAP as an enterprise, or (2) coverage for themselves as individual employees engaged in interstate commerce, regardless of LAP's status as an enterprise. The parties do not dispute the basic legal principles applicable to this case.

This motion turns on whether the Shoemakers have adduced evidence sufficient to raise a genuine issue of material fact on whether LAP or the Shoemakes have engaged in interstate commerce. To avoid summary judgment, the Shoemakers "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). They may not simply rely on the allegations in the pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [their] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996). Because the Shoemakers bear the burden of proving FLSA coverage, they "must then go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial." *Id.* at 931; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Finally, the Shoemakers may use only

admissible evidence to demonstrate an issue for trial. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.").

**A. Enterprise coverage for LAP**

The court begins with the question of whether LAP is covered as an enterprise engaged in interstate commerce, as defined in the FLSA. For an enterprise to engage in commerce, it must (1) have employees engaged in commerce or in the production of goods for commerce; and (2) have "annual gross volume of sales made or business done [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A). LAP is not covered because it does not meet the second element of the statutory definition.

Whether LAP meets the $500,000 annual revenue requirement is a question of law for the court, even though it is based on a factual determination. *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 747 (7th Cir. 2011) ("[T]he ultimate determination whether the employer is an enterprise subject to FLSA's requirements is ordinarily the court's province, not the jury's."). Because this matter is presented to the court on summary judgment, on a motion filed on the deadline for such motions, both sides have by now had an ample opportunity to develop evidence on the issue.

Hope Laufenberg provided a declaration that LAP has never generated annual gross sales of $500,000 or more. Dkt. 13, ¶ 7. The Shoemakers contest the statement as inadmissible hearsay because it does not include the underlying data. Dkt. 14, at 4, and Dkt. 15, at 3. But the declaration contains statements by one with personal knowledge made under penalty of perjury, and it is thus admissible under Federal Rule of Evidence 803(6), which makes the declaration admissible at summary judgment under Federal Rule of Civil Procedure 56(c)(4).

And LAP provided the underlying data in response to the Shoemakers' challenge. Dkt. 24, ¶¶ 4-6; Dkt. 24-1; Dkt. 24-2.

The Shoemakers also object that Laufenberg's statement does not specify the time period that it covers. But by its terms, Laufenberg's declaration refers to LAP's entire three-year existence, about which she has extensive personal knowledge. The Shoemakers have not adduced any evidence of their own to controvert LAP's evidence. Thus, the Shoemakers have not raised a genuine issue of disputed fact as to whether LAP meets the $500,000 annual revenue requirement. LAP is entitled to judgment as a matter of law that it is not an enterprise covered under the FLSA.

**B. Individual coverage for the Shoemakers**

The court turns now to the question of whether the Shoemakers themselves engaged in interstate commerce while they were employees of LAP. Regardless of LAP's status, the FLSA would cover the Shoemakers if they individually engaged in interstate commerce. 29 U.S.C. § 207(a)(1). The Shoemakers contend that they are covered by the FLSA because they performed work: (1) related to the actual movement of commerce; and (2) using the channels of commerce. Dkt. 15. Because the uncontested facts defeat both arguments, the court will grant summary judgment that the Shoemakers were not individually engaged in interstate commerce and are not covered by the FLSA.

The FLSA applies to those who are *engaged* in commerce; it is not enough to show that the employee's activities *affected* commerce. *Mitchell v. Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 494 (1943)). For an employee to "engage in commerce" himself, his work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955) (citations

omitted). This is a practical inquiry that focuses on the specific activities of the employee and what kind of effect those activities might have on interstate commerce. *Id.* For example:

> One practical question to be asked is whether, without the particular service, interstate or foreign commerce would be impeded, impaired, or abated; others are whether the service contributes materially to the consummation of transactions in interstate or foreign commerce or makes it possible for existing instrumentalities of commerce to accomplish the movement of such commerce effectively and to free it from burdens or obstructions.

29 C.F.R. § 776.9. If the employee's activities fall below this level of engagement with interstate commerce, then the activities are considered to be more local in nature and the employee falls outside of FLSA coverage.

The Shoemakers argue that they performed work related to the actual movement of commerce because they provided customer service to people visiting LAP from outside Wisconsin. But the services that they provided were local, at the skate counter or the diner, for example. Serving some out-of-state patrons who visit the rink alongside the local patrons does not make the service "so directly and vitally related to the functioning" of LAP as a facility of interstate commerce as to *constitute* interstate commerce. *C.W. Vollmer & Co.*, 349 U.S. at 429 (citations omitted). At best, their service was a local activity that may have *affected* interstate commerce. *See id.*; *Yan v. Gen. Pot, Inc.*, No. 14-cv-035, 2015 WL 166973, at *3 (N.D. Cal. Jan. 13, 2015) (finding restaurant service to out-of-state customers insufficient to fall under the FLSA); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 526 (D. Md. 2006) (same); *Xelo v. Mavros*, No. 03-cv-3665, 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (same); *Lamont v. Frank Soup Bowl, Inc.*, No. 99-cv-12482, 2001 WL 521815, at *2-3 (S.D.N.Y. May 16, 2001) (same). Because the Shoemakers served LAP customers locally, the court concludes that these

6

service activities did not constitute interstate commerce. They were therefore insufficient to entitle the Shoemakers to FLSA coverage.

The Shoemakers' final argument is that they performed work using interstate mail, telephone, and the internet, which are all instrumentalities of interstate commerce. The regulations provide that "if the employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information . . . across State lines, he comes within the scope of the Act." 29 C.F.R. § 776.10(b). Moreover, "[t]he Act makes no distinction as to the percentage, volume, or amount of activities of either employee or employer which constitute engaging in commerce or in the production of goods for commerce." *Id.* § 776.3. However, the activities must be "regular and recurring" to be covered by the Act. *Id.*

The Shoemakers claim to have regularly used instrumentalities of interstate commerce like telephones and the internet. They state, in declarations, that they "regularly" used Facebook, credit cards, and the texting capabilities of their cell phones. Dkt. 17 and Dkt. 18. They describe a fax machine that they used, presumably at least once. But they fail to specify what exactly they mean by "regularly," and they fail to support their statements with evidence. General and conclusory proposed facts are insufficient because "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. Du Page Cnty.*, 715 F.2d 1238, 1243 (7th Cir. 1983). The Shoemakers also fail to establish that they did these things *across state lines*. *See Thorne*, 448 F.3d at 1267 (finding that a plaintiff did not fall within the FLSA where he "did not produce evidence that he corresponded with merchants outside the state . . . using the mail, phone, or fax").

Further, the Shoemakers' statements are at odds with earlier statements that they made in their depositions. *Compare* Dkt. 8 (Russ Shoemaker Dep. 51:18-52:3), *with* Dkt. 17. When an

affiant makes one statement under oath, for example in a deposition, but then later makes a contradictory statement, under penalty of perjury, the court must be skeptical. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.") (citations omitted). Caution is necessary because "[c]redibility and weight are issues of fact for the jury, and we must be careful not to usurp the jury's role." *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004) (citing *Bank of Ill.*, 75 F.3d at 1170). In their depositions, the Shoemakers testified at length about the nature of their employment activities, and neither claimed to use the internet regularly. *See* Dkt. 8 and Dkt. 9. In fact, Russ stated that he did not really use it at work, but he "maybe" used it "at home trying to research something in [his] spare time." Dkt. 8 (Russ Shoemaker Dep. 51:18-52:3). By contrast, his declaration states that he "regularly used the internet to research competitors and their methods of doing business and to interact with customers via social media." Dkt. 17, at 2. The declaration goes on to state that Russ "regularly used the business's Facebook page to interact with customers." *Id.* Because Russ's declaration flatly contradicts his deposition testimony, the court will disregard his declaration.

But even if the court were to overlook the inconsistencies and credit the Shoemakers' assertions that they used credit cards, credit card machines, a fax machine, and even company telephones to complete transactions and communicate, the Shoemakers have not adduced evidence to suggest that these activities were regular and recurring or that they went across state lines. The Shoemakers have failed to meet their burden of demonstrating sufficient engagement with interstate commerce to bring them within the reach of the FLSA. Instead, the undisputed facts show that the Shoemakers worked for a local business in an intrastate capacity. Because the Shoemakers have failed to raise a genuine dispute of a material fact as to whether they are

8

covered by the FLSA, the court will grant LAP's motion for summary judgment on the FLSA claim.

## C. Disposition of the state-law claims

Without the FLSA claim, all that remains in the case are the Shoemakers' state law claims. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over these claims after a federal claim that gave rise to original jurisdiction has dropped from the case. Although the decision is within the court's discretion, the general rule is that "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). The Shoemakers do not identify any statute of limitations concerns, which could warrant retaining jurisdiction. And because the court has not yet considered the merits of the state law claims, there is no efficiency in having this court resolve those claims. The state law claims will therefore be dismissed without prejudice to the Shoemakers pursuing those claims in state court.

## ORDER

IT IS ORDERED that:

1. Defendant Lake Arbutus Pavilion LLC's motion for summary judgment on Russ Shoemaker and Lori Braget-Shoemaker's Fair Labor Standards Act claim, Dkt. 10, is GRANTED.

2. The court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367, and those claims are DISMISSED without prejudice.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered June 30, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge